PRECEDENTIAL FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| WILSON MENDEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. 2005-0165 |
| v. | ) | |
| | ) | |
| COASTAL SYSTEMS DEVELOPMENT, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

FINCH, J.

THIS MATTER comes before the Court on a Motion to Strike Tort Damages filed by Defendant Coastal Systems Development, Inc. (hereinafter "CSD"). Plaintiff, Wilson Mendez, opposes such motion.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired to work for Defendant as a forklift operator and the parties entered into an employment contract on April 29, 2005. Plaintiff was assigned to work under the supervision of Frank Vice. Plaintiff alleges that Vice created a hostile work environment that was offensive and intolerable. Complaint ¶ 9. According to Plaintiff, Vice immediately began cursing at him and demanded that Plaintiff use the forklift in an unsafe manner around pedestrians. Complaint ¶¶ 9-10.

1

After Plaintiff complained to Greg Charney, Vice's boss, about the abusive treatment, Charney promised Plaintiff that "everything would be taken care of."  Complaint ¶ 11.  However, Plaintiff claims that Vice continued to verbally abuse him and insisted that Plaintiff operate the forklift in a manner that was dangerous to Plaintiff and to others.  Complaint ¶ 13.  Plaintiff once again complained to Charney and, rather than punishing Vice, Charney suspended Plaintiff from work for one week. Complaint ¶ 15.

Plaintiff returned to work and was placed back under Vice's supervision.  Plaintiff alleges that Vice continued to subject him to abusive treatment while Plaintiff operated the forklift.  Plaintiff complained for a third time and the day after he complained Charney told him that, due to his inability to work with Vice, his employment was terminated.  Complaint ¶ 27.

Plaintiff then filed suit against Defendant.  In its answer, Defendant asserted that Coastal Systems USVI Inc., a local subsidiary or affiliate of Defendant, was the Plaintiff's employer.  Thereafter, Plaintiff filed suit in Superior Court asserting the same claims as those contained in this action against Coastal Systems USVI Inc.  Mendez v. Coastal Systems USVI, Case No. SX-05-CV-160.

Coastal Systems USVI Inc. moved for dismissal of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).  While the motion to dismiss was pending in the Superior Court, Defendant moved for a stay of this matter due to the identical nature of the legal claims and factual allegations set forth in both complaints.  The Court granted Defendant's motion on November 7, 2006.  On May 22, 2007, the Superior Court dismissed all of Plaintiff's claims against Coastal Systems USVI Inc. except for his claim for breach of the duty of good faith and fair dealing related to the employment relationship between the parties.

On December 11, 2007, this Court dismissed Plaintiff's claims for breach of contract, intentional infliction of emotional distress, breach of the Virgin Islands Wrongful Discharge Act, and punitive damages under the doctrine of collateral estoppel.  Plaintiff's only remaining claim is for breach of the duty of good faith and fair dealing.  Defendant now asks the Court to strike all claims for tort damages sought by Plaintiff in his complaint.

Plaintiff contends that Defendant's breach of the duty of good faith and fair dealing sounds in tort and entitles him to tort damages, including damages for pain and suffering, mental anguish and loss of enjoyment of life.   See Pl.'s Opp. to Mot. to Strike Tort Damages at 9.  Plaintiff asserts that his damages are worth far more than the mere contractual damages.

## II.   STANDARD OF REVIEW

The question the Court must determine in this matter is whether a breach of the duty of good faith and fair dealing is a contract claim or a tort claim.  This issue has not yet been considered by the Supreme Court of the Virgin Islands.  Under the Erie doctrine, when exercising jurisdiction over cases requiring the application of Virgin Islands law, the Court is required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law.  See Edwards v. Hovensa, LLC, 497 F.3d 355, 362 n.4 (3d Cir. 2007); see also Haugh v. Allstate Ins. Co., 322 F.3d 227, 234 (3d Cir. 2003) ("In the absence of an opinion from a state's highest court on a matter of state law, a federal court determining state law must predict how that court would rule on the matter if confronted with it.").  Because the Virgin Islands Supreme Court has made no determinations on the issue presented in this case, the following

decision is based on the Court's prediction as to how the Supreme Court of the Virgin Islands would resolve the issue of territorial law presented here.

In the absence of contravening local law, the Court must rely on the rules of common law as expressed in the Restatements of Law.  1 V.I. CODE ANN., tit. 1 § 4.  If not expressed therein, the rules of common law as generally understood and applied in the United States shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply.  <u>Id</u>.

### III.    WHETHER THE DUTY OF GOOD FAITH AND FAIR DEALING ARISES UNDER CONTRACT LAW OR TORT LAW

#### A.   <u>Restatements of Law Suggest that the Duty of Good Faith and Fair Dealing is Based in Contract Law</u>

Under the Restatement (Second) of Contracts § 205 (1981), titled "Duty of Good Faith and Fair Dealing," "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its  enforcement."  Good faith means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."  <u>Id.</u> at 100, cmt. a.  Unlike the Restatement (Second) of Contracts, the Restatement (Second) of Torts makes little mention of the duty of good faith and fair dealing.[1]  Although the Restatements of Law do not resolve the issue in this matter, the lack

---

[1] Under the Restatement (Second) of Torts, the only reference made to "good faith and fair dealing" appears in comment l to § 551, titled "Information Negligently Supplied for the Guidance of Others." The comment does not describe "good faith and fair dealing" as a duty imposed under the law of torts but, rather, it is mentioned in the context of a buyer/seller relationship.  <u>See</u> Restatement (Second) of Torts, § 551, cmt l.  It states, in relevant part, "There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that the

of any substantive discussion within the Restatement (Second) of Torts tends to show that such a

duty is based in contract rather than tort law.  Because the Restatements of Law are not

determinative in this instance, the Court must consider the majority view of those courts that

have addressed the particular question at hand.

## B.   <u>Under the Majority View, an Employer's Breach of the Covenant of Good Faith and Fair Dealing Only Allows for Contract Damages</u>

There exists a split in the various states concerning whether a plaintiff may recover under

a tort cause of action for breach of the implied covenant of good faith and fair dealing.  However,

the majority of jurisdictions that have addressed this issue have concluded that an employee may

not recover in tort for an employer's breach of an implied covenant of good faith and fair

dealing.[2]  <u>See</u> <u>Hoffman-La Roche, Inc. v. Campbell</u>, 512 So. 2d 725, 738 (Ala. 1987); <u>Arco</u>

<u>Alaska, Inc. v. Akers</u>, 753 P.2d 1150 (Alaska 1988); <u>Wagenseller v. Scottsdale Mem'l Hosp.</u>,

710 P.2d 1025, 1040 (Ariz. 1985); <u>Foley v. Interactive Data Corp.</u>, 765 P.2d 373 (Cal. 1988);

<u>Decker v. Browning-Ferris Indus. of Colorado, Inc.</u>, 931 P.2d 436 (Colo. 1997); <u>Barry v. Posi-</u>

<u>Seal Int'l, Inc.</u>, 672 A.2d 514 (Conn. App. Ct. 1996); <u>E.I. DuPont de Nemours & Co. v.</u>

<u>Pressman</u>, 679 A.2d 436 (Del. 1996); <u>Metcalf v. Intermountain Gas Co.</u>, 778 P.2d 744, 748

(Idaho 1989); <u>Martin v. Federal Life Ins. Co.</u>, 440 N.E.2d 998, 1006 (Ill. App. Ct. 1982);

---

adversary…is reasonably relying upon a disclosure of the unrevealed fact if it exists.  In this type of case good faith and fair dealing may require a disclosure."

[2] Several jurisdictions have outright rejected any application of an implied covenant of good faith and fair dealing in an employment relationship.  <u>See</u> <u>Kamaka v. Goodsill Anderson Quinn & Stifel</u>, 176 P.3d 91 (Haw.  2008) ; <u>Phipps v. IASD Health Servs. Corp.</u>, 558 N.W.2d 198 (Iowa 1997); <u>Morriss v. Coleman Co., Inc.</u>, 738 P.2d 841 (Kan. 1987); <u>Dahlman v. Oakland Univ.</u>, 432 N.W.2d 304 (Mich. App. Ct. 1988); <u>Hunt v. IBM Mid-America Employees Fed. Credit Union</u>, 384 N.W.2d 853 (Minn. 1986); <u>Hillesland v. Federal Land Bank Association</u>, 407 N.W.2d 206, 214 (N.D.1987); <u>Federal Express Corp. v. Dutschmann</u>, 846 S.W.2d 282 (Tex. 1993); <u>Thompson v. St. Regis Paper Co.</u>, 685 P.2d 1081 (Wash. 1984).

Maddaloni v. Western Mass. Bus Lines, Inc., 438 N.E.2d 351 (Mass 1982); Noye v. Hoffmann-La Roche Inc., 570 A.2d 12, 15 (N.J. Super. Ct. App. Div. 1990); Bourgeous v. Horizon Healthcare Corp., 872 P.2d 852, 857 (N.M. 1994); Murphy v. American Home Products Corp., 448 N.E.2d 86, 89-91 (N.Y. 1983); Nelson v. WEB Water Dev. Ass'n, 507 N.W.2d 691 (S.D. 1993); Berube v. Fashion Centre Ltd., 771 P.2d 1033 (Utah 1989); Tatge v. Chambers & Owen, Inc., 579 N.W.2d 217 (Wis. 1998). Only a minority of the states have extended tort liability to encompass an employer's breach of the implied covenant of good faith and fair dealing and only in limited circumstances. See Prout v. Sears Roebuck and Co., 772 P.2d 288 (Mont. 1988); K Mart Corp. v. Ponsock, 732 P.2d 1364 (Nev. 1987); Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211, 222 (Wyo. 1994).

Plaintiff is seeking to enforce rights wholly predicated on Plaintiff's contractual relationship with Defendant. See Darlington v. General Electric, 504 A.2d 306, 309 (Pa Super. Ct. 1986) ("Every employment relationship is also a contractual relationship. Even at-will employment is formed by contract."). Several courts have succinctly held that "[w]here a duty of good faith arises, it arises under the law of contracts, and there is no need to create a tort for breach of the duty of good faith. . . ." Jo-Ann's Launder Center, 854 F.Supp. 387, 390 (D.V.I. 1994); see Northview Motors, Inc. v. Chrysler Motors Corporation, 227 F.3d 78, 91 (3d Cir. 2000). Other courts have concluded that an independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself. See e.g. International Minerals and Mining Corporation v. Citicorp North America, Inc., 736 F. Supp. 587, 596 (D.N.J. 1990).

The Court in Jo-Ann's Launder Center considered whether a tort duty existed where there was a contractual relationship between the parties, giving rise to an implied duty of good faith

and fair dealing.  Jo-Ann's Launder Center, 854 F.Supp. at 392.  The Court held that a

borrowers' tort remedies against a lender bank could not be maintained in addition to those

established under the contract itself.  Id. at 391.  Specifically, the Court noted that a "breach of

contract, absent a duty or obligation imposed by law independent of that arising out of the

contract itself, is not enough to sustain an action sounding in tort."  Id. at 392 (quoting Jacques v.

First National Bank, 515 A.2d 756, 759 (Md. 1986)); see also Bagwell v. Fafard, Inc., 2007 U.S.

Dist. LEXIS 50362 at *22-23 (D.S.C., July 11, 2007) (holding that claim for breach of implied

covenant of good faith and fair dealing is only applicable insofar as a contract is held to exist.);

RoTec Servs. v. Encompass Servs., 597 S.E.2d 881, 883-84 (S.C. App. Ct. 2004) (same holding).

        The covenant of good faith and fair dealing in employment matters serves to protect the

integrity of all of the promises made by the parties to the agreement setting forth the terms and

conditions of employment.  See Decker, 931 P.2d at 443; Metcalf, 778 P.2d at 749.  A breach of

such a covenant therefore constitutes a breach of an obligation created by the contract, Foley,

765 P.2d at 394; Metcalf, 778 P.2d at 749, rather than breach of an obligation arising

independently from the contract, see Dvorak v. Pluswood Wis., Inc., 358 N.W.2d 544, 545-46

(Wis. Ct. App. 1984); Decker, 931 P.2d at 443.  Plaintiff's complaint leaves no doubt that this is

an action for breach of contract and "an action exists in tort or contract, but not both."  Jo-Ann's

Launder Center, 854 F.Supp. at 392.  Caselaw strongly suggests that tort liability for breach of a

contractual duty can only be created in exceptional circumstances.  In re Tutu Water Wells

Contamination Litig., 78 F.Supp. 2d 436, 452 (D.V.I. 1999); see also Bell v. Chase Manhattan

Bank, 40 F. Supp. 2d 307, 318-319 (D.V.I. 1999) ("While there may be instances when torts

arise out of contractual breaches, they are rare indeed").

Although <u>Jo-Ann's Launder Center</u> was not an employment case, the same principles apply in the matter at bar.  In this case, Plaintiff's claim against Defendant is solely based on the employment contract.  Plaintiff advances no independent tort claim save allegations of tort damages directly related to Defendant's alleged breach of contract.  Defendant, at most, had a contractual duty to act in good faith with regard to the employment agreement.  In the absence of any independent duty owed by Defendant, Plaintiff's tort remedies may not be maintained.  <u>See Cade v. Conseco Health Ins. Co.</u>, 2001 U.S. Dist. LEXIS 24017 at *10-11 (D.S.C., Dec. 14, 2001); <u>see also</u> <u>Williams v. Riedman</u>, 529 S.E.2d 28, 40 (S.C. Ct. App. 2000) ("Under a breach of contract claim, a party's damages are limited to those under the contract, and no tort remedies are available.  Logically, only contract damages would be available for a breach of the implied covenant of good faith and fair dealing."); <u>Metcalf</u>, 778 P.2d at 748 (noting that breach of covenant of good faith and fair dealing results in contract damages, not tort damages).

### C.  The Virgin Islands' Wrongful Discharge Act Provides Protection for Employees Against Tortious Termination by Employers

The covenant of good faith and fair dealing should not be viewed too broadly, for the risk is that it may be misapplied.  In <u>Decker</u>, 931 P.2d at 439, the Colorado Supreme Court was confronted with essentially the same issue that is before this Court: whether or not to recognize a tort claim for breach of the covenant of good faith and fair dealing in the employment context. The court explained that:

> "a tort claim for breach of covenant of good faith and fair dealing need not be recognized in the employment context because we have previously recognized the existence of a tort claim for wrongful discharge in violation of public policy.  That claim, as well as tort claims for bad faith breach of insurance contracts, are firmly grounded in legislative or other public policy declarations thus insuring that all interested parties are aware of the scope of the relevant duty… It is thus apparent that the torts of wrongful discharge in

> violation of public policy and bad faith breach of the implied covenant of good faith and fair dealing inherent in insurance contracts are based on administrative or legislative declarations of public policy. As a result, employers and insurers have notice of the scope of their duties to their employees and insureds. No parallel declarations of public policy have been articulated by the General Assembly or other governmental institutions with respect to the employment context. In the absence of such declarations of public policy, there is no appropriate basis upon which to ground a tort of breach of an express covenant of good faith and fair dealing in employment contracts.  To the extent the contents of employment contracts and insurance contracts are similar, the tort of wrongful termination of an employment contract in violation of public policy represents an appropriate analog to the tort of bad faith breach of the implied covenant of good faith and fair dealing of an insurance contract."

Id. at 446.  Rather than recognizing a tort claim for wrongful discharge, as does Colorado, the Virgin Islands has a statute prohibiting wrongful discharge of an employee.  See Virgin Islands Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76(a).  Nevertheless, the Court finds the reasoning in the Decker opinion to be persuasive.  An employer's interest in running his or her business as he or she sees fit must be balanced against the interest of the employee in maintaining his or her employment, and the public's interest in maintaining a proper balance between the two.  See Monge v. Beebe Rubber Co., 316 A.2d 549, 551 (N.H. 1974).  However, the public policy against wrongful termination is already protected by a comprehensive legislative scheme in the Virgin Islands by way of the Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76(a).

Allowing for tort damages in employment cases for breach of the duty of good faith and fair dealing would essentially amount to legislative decisionmaking, which is not the role of the judiciary.  See Foley., 765 P.2d at 397 (finding that extension of bad faith tort claims to the employment context "is better suited for legislative decisionmaking."). Not only would the legislative preference for an appropriate solution be circumvented, serious problems would be posed as to the extent of the remedy to be provided.  The Court is not willing to interfere with the remedial scheme already in place by creating a new common law action based on public policy.

Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 511-512 (Mass. App. Ct. 1985) ("[A] finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer."); see also Geary v. United States Steel Corp., 319 A.2d 174 (Pa 1974) (finding that tort remedy was not available where employee fired for not following corporate hierarchy procedure in protesting company policy as to safety of a product); Plaum v. Jefferson Pilot Fin. Ins. Co., 2004 WL 2980415, at *6 (E.D. Pa., Dec. 22, 2004) ("Pennsylvania does not, however, recognize a common law cause of action in tort for breach of the duty of good faith and fair dealing. . . ."); Greater New York Mut. Ins. Co. v. N. River Ins. Co., 872 F.Supp. 1403, 1409 (E.D. Pa. 1995) (same).

### D. The Narrow Exception Allowing Tort Liability for Breach of the Duty of Good Faith and Fair Dealing in Insurance Cases Does Not Apply

Although Plaintiff cites to cases that discuss a narrow exception for tort recovery in a good faith and fair dealing claim, none of those cases were premised upon breach of an employment agreement. See Pl.'s Opp. to Mot. to Strike Tort Damages at 5. In support of his argument, Plaintiff cites to cases involving insurance and banking, where there is a special or fiduciary relationship that creates inequity of bargaining power between the parties. [3] Id.; see Sterling Nat'l Mortg. Co. v. Mortgage Corner, 97 F.3d 39, 44 (3d Cir. 1995); Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1273-74 (Colo. 1985); Farmers Group, Inc. v. Trimble, 691 P.2d 1138,

---

[3] A special or fiduciary relationship may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service. Cleary v. American Airlines, Inc., 168 Cal.Rptr. 722, 729 (Cal. App. 2d Dist. 1980). In McCullough v. Golden Rule Ins. Co., 789 P.2d 855, 860 (Wyo. 1990), the court permitted tort recovery for breach of the implied covenant based upon the special relationship created by the unequal bargaining power that an insurer has over an insured. The court in McCullough held that, when a special relationship of trust and reliance is demonstrated, a breach of the implied covenant is actionable as a tort. McCullough, 789 P.2d at 861.

1141-42 (Colo. 1984).  Because an insurer's bad faith refusal to pay valid claims defeats the underlying purpose of the insurance contract, a special duty is imposed upon an insurer to deal in good faith with an insured.  Decker, 931 P.2d at 443.  However, a breach in the employment context does not place an employee in the same economic dilemma that an insured faces when the insurer in bad faith refuses to pay a claim or to accept a settlement offer within policy limits.[4] Foley, 765 P.2d at 396; see also Osborn v. Univ. Med. Assocs. of the Med. Univ. of S.C., 278 F. Supp. 2d 720, 741 (D.S.C. 2003) ("it is clear that tort remedies are not available for breach of implied covenant of good faith and fair dealing in the employment context.").

In Foley, the California Supreme Court held that a claim for breach of the implied covenant of good faith and fair dealing was limited to contractual damages and was not in tort, stating that:

> An allegation of breach of the implied covenant of good faith and fair dealing is an allegation of breach of an "ex contractu" obligation, namely one arising out of the contract itself. The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes. The insurance cases thus were a major departure from traditional principles of contract law. We must, therefore, consider with great care claims that extension of the exceptional approach taken in those cases is automatically appropriate if certain hallmarks and similarities can be adduced in another contract setting.

Foley, 765 P.2d at 394.  Rejecting the argument that the employment relationship was analogous to that of insurance, the court noted that when an insurer acts in bad faith, the insured cannot turn to the marketplace and find another insurance company willing to pay for the loss.  Id. at 396. On the other hand, an employee who is terminated is able to seek alternative employment.  Id.

---

[4] The special relationship necessary to permit tort recovery is not established merely by the employer-employee relationship.  Wilder, 868 P.3d at 221; Riedman, 529 S.E.2d at 36 (holding that tort action for breach of implied covenant of good faith and fair dealing is unique to insurance law and is not available in action for breach of employment contract).

The court in <u>Foley</u> recognized a fundamental difference between insurance and employment relationships.  <u>Id</u>.  In the insurance relationship, the insurer and the insured are financially at odds while the interests of the employer and employee are most frequently in alignment because it is to the employer's economic benefit to retain good employees.[5]  <u>Id</u>.  The Court observed that:

> The employment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees.

<u>Id</u>. at 396; <u>see also</u> <u>Riedman</u>, 529 S.E.2d at 36 ("[Plaintiff's] cause of action for breach of implied covenant of good faith and fair dealing should only allow recovery of contract damages. Because an insurance relationship is decidedly different from an employment relationship, we decline to permit tort recovery for this cause of action."); <u>Wagenseller</u>, 710 P.2d at 1040 (explicitly refusing to extend bad faith recovery available in actions on insurance contracts to employment contract context).

Only in the limited insurance context have courts within the Third Circuit allowed recovery in tort for breach of the implied covenant of good faith and fair dealing.  <u>See</u> <u>Am. Hardware Mut. Ins. Co. v. Harley Davidson of Trenton, Inc.</u>, 124 Fed. Appx. 107, 110 (3d Cir.

---

[5] The "quasi-fiduciary" relationship between an insurer and an insured arises out of the insurer's special duty owed to the insured as well as the fact that, when an insured suffers a loss, the insured becomes "particularly vulnerable" to the insurer.  <u>Decker</u>, 931 P.2d at 443; <u>see also</u> <u>Bibeault v. Hanover Ins. Co.</u>, 417 A.2d 313, 318 (R.I. 1980).  An insurer may delay payment of a claim to the insured in the hope of settling for an amount less than that which is due under the contract.  <u>Decker</u>, 931 P.2d at 443.  Thus, the duty of good faith and fair dealing in the context of insurance contracts also arises from the heightened reliance necessarily placed by an insured on the insurer.  <u>Id</u>.; <u>see</u> <u>K Mart</u>, 732 P.2d at 1370; <u>see also</u> <u>Wailua Association v. Aetna Casualty & Surety Co.</u>, 183 F.R.D. 550, 560 (D. Haw. 1998) (explaining that while breach of implied duty of good faith normally gives rise to action in contract, unique nature of insurer's duty under insurance contract constituted "exception" which justified imposition of tort liability upon insurer).

2005); Di Salvatore v. Aetna Casualty & Surety Co., 624 F. Supp. 541, 543 (D.N.J. 1986); Rova

Farms Resort v. Investors Ins. Co., 323 A.2d 495, 505 (N.J. Sup. Ct. 1974).  In all other cases

involving contractual agreements, courts within the Third Circuit apply contract law to claims

arising from the duty of good faith and fair dealing on the ground that such claims sound solely

in contract.  See Standard Chlorine of DE, Inc. v. Sinibaldi, 1994 WL 830145 at *4 (D. Del. Dec.

8, 1994); Vargas v. Camden City Board of Edu., 2006 WL 840393 at *7 (D.N.J. Mar. 28, 2006);

see also Noye, 570 A.2d at 15 ("[T]ort damages do not lie for breach of an implied covenant of

good faith and fair dealing found in an employment contract.").

> 1.   **Minority View Allows Tort Recovery for Breach of the Duty of Good**
>
> **Faith and Fair Dealing in the Employment Context**

A minority of jurisdictions have applied rationales developed in insurance contract cases

to recognize a tort claim in an employment context where there is a special relationship between

the parties.  In K Mart, 732 P.2d at 1370, the plaintiff was employed by the defendant as a

forklift driver and, a few months before the plaintiff's retirement benefits were due to vest, the

plaintiff's employment was terminated.  The plaintiff had been employed for ten years, during

which time the defendant consistently characterized the plaintiff as an excellent employee.  Id. at

1366.   The reason given by the defendant for terminating the plaintiff was that he had applied

paint to the battery cover of the forklift without asking permission from his supervisor.  Id.  The

plaintiff had applied the paint in order to remedy the deteriorating condition of the battery cover

and, when asked by a maintenance worker to remove the paint, the plaintiff did so.  Id. at 1367.

The plaintiff was chastised by his supervisor and his "separation report" indicated that he had

been terminated for using misappropriated paint to deface company property when he should

have been working.  Id.

A jury determined that the plaintiff was actually terminated by the defendant in an effort to avoid paying the plaintiff's retirement benefits. Id. at 1368. Finding that the plaintiff was very much dependent economically upon the defendant and particularly vulnerable to the defendant's abuse because of that dependency, the court held that the plaintiff was entitled to tort damages. Id. at 1372. The court reasoned that the employment relationship in that case was analogous to the relationship between an insured and an insurer because the plaintiff specially relied on the defendant's implied promise to retain the plaintiff until retirement. Id.

The court in K Mart limited its holding to the unique facts and circumstances of the case, explaining that: "The special relationships of trust between this employer and this employee under this contract under this type of abusive and arbitrary dismissal cries out for relief and for a remedy beyond that traditionally flowing from breach of contract." K Mart, 732 P.2d at 1372. Since its decision in K Mart, the Nevada Supreme Court has greatly limited this tort remedy. See D'Angelo v. Gardner, 819 P.2d 206, 215 (Nev. 1991); Martin v. Sears, Roebuck & Co., 899 P.2d 551, 555 (Nev. 1995). In D'Angelo, the Supreme Court of Nevada distinguished K Mart, finding that the plaintiff, who was employed by the defendant for less than two years, was not entitled to an award of tort damages. The D'Angelo court described K Mart as "the exemplar for that narrow class of cases in which, because of the relationship of employer to employee, the offending conduct 'goes well beyond the bounds of ordinary liability for breach of contract.'" D'Angelo, 819 P.2d at 215 (quoting K Mart, 732 P.2d at 1370).

In the jurisdictions that recognize the narrow exception in the employment context, breach of the covenant of good faith and fair dealing requires a showing of a special relationship between the parties before recovery in tort is permitted. K Mart, 732 P.2d at 1370 ("[I]t is only in rare and exceptional cases that the duty [of good faith and fair dealing] is of such a nature as to

14

give rise to tort liability.").  Generally, the special relationship giving employees an action on the

duty of good faith and fair dealing stems from a long term employment relationship coupled with

a discharge calculated to avoid employer responsibilities to the employee, e.g., benefits or

commissions.[6] Garcia v. UniWyo Fed. Credit Union, 920 P.2d 642, 646 (Wyo. 1996) (citing

Fortune v. National Cash Register Co., 364 N.E.2d 1251, 1257 (Mass. 1977) and K Mart, 732

P.2d at 1366-69).

> ## 2. Plaintiff's Employment Relationship with Defendant Does Not Constitute a "Special Relationship"

The minority view permitting tort recovery for breach of the duty of good faith and fair

dealing in the employment context if a "special relationship" exists is not currently recognized in

the Virgin Islands and the Court sees no reason to allow for such an exception.  See Noye, 570

A.2d at 15.  Even if the Court were disposed to adopt the minority view in a proper case, it does

not apply here because Plaintiff is unable to show that a special relationship existed between the

parties.

Plaintiff acknowledged that he was being hired by Defendant "as a temporary employee

to perform services for an indefinite period of time on an as-needed basis."  Hence, an at-will

employment agreement is involved.  Based on the allegations as pled, the Court does not find

sufficient longevity in Plaintiff's employment with Defendant or other circumstances that would

---

[6] In Wilder, 868 P.2d at 220-22, the Supreme Court of Wyoming found that a relationship similar to that between an insurer and insured "may be present" in the employment context and tort recovery may be possible if the employer's actions were sufficiently "egregious."  The court held that the special relationship of trust and reliance necessary for tort recovery was not established solely by the employment relationship itself.  Id.  Rather, circumstances including the existence of separate consideration, common law or statutorily established rights, or special rights resulting from longevity of service must be shown. Id. at 220; see Drake v. Cheyenne Newspapers, Inc., 891 P.2d 80, 83 (Wyo. 1995).

establish a special relationship.[7]  Furthermore, Plaintiff has not provided the Court with any

evidence that his termination occurred as a way to avoid payment of benefits already earned

under the employment agreement.  See Wilder, 868 P.2d at 222; see also K Mart, 732 P.2d at

1370 (nine and a half year contract employee was fired, for trivial reasons, six months prior to

the time his pension was scheduled to fully vest); Fortune, 364 N.E.2d at 1255-58 (twenty-five

year employee was fired to avoid paying bonuses due him on large sale he had just completed);

RLM Assocs. v. Carter Mfg. Corp., 248 N.E.2d 646 (Mass. Sup. Ct. 1969) (employee terminated

based upon desire to avoid paying commission).  Therefore, the circumstances of this case bear

none of the particular characteristics of either the first-party insurance contract or employment

contract which drove the decisions in McCullough and Wilder.  The requisite special relationship

cannot have ripened here because "the kind of deception and perfidy which was the essence of

the bad faith tort" in K Mart and McCullough is not present in this case.  See D'Angelo, 819

P.2d at 215 (finding that employee could not show breach of implied covenant where he had

been employed for less than two years and special relationship had not "ripened" despite having

"permanent" status under implied in fact contract).

### E.   Tort Damages Are Not Available for Breach of the Duty of Good Faith and Fair Dealing in the Employment Context

After careful consideration, the Court holds that the duty of good faith and fair dealing

arises under contract law and, in the absence of any independent duty owed by Defendant outside

of the employment agreement, Plaintiff's tort remedies may not be maintained.  The

---

[7] "The duration of an employment relationship over a period of years is not sufficient, alone, to give rise to a special relationship" and the Court is not aware of any case "in which such a special relationship has ripened over a period of mere months." Garcia, 920 P.2d at 646.

16

Restatements of Law tend to show that the duty of good faith and fair dealing is based in contract law rather than tort law.  Furthermore, the majority view of those courts that have addressed the issue is that a breach of the implied covenant only allows for recovery of contract damages in employment cases.  Although a narrow exception exists allowing for tort recovery in insurance cases, an insurance relationship is decidedly different from an employment relationship.  Other than in very limited circumstances, courts within the Third Circuit have applied contract law to a claim for breach of the implied covenant of good faith and fair dealing.  Therefore, the Court finds that tort damages are not available for a breach of the implied covenant of good faith and fair dealing in the employment context.

The Court declines to follow the minority of courts which allow recovery in tort for breach of the duty of good faith and fair dealing in an employment contract. A breach of the covenant of good faith and fair dealing constitutes a breach of an obligation created by the underlying contract and, in view of the protection provided by the Virgin Islands' Wrongful Discharge Act, the Court will not attempt to create a new common law remedy for wrongful dismissals. Even if the Virgin Islands adopted the narrow exception allowing tort recovery for breach of the implied covenant in an employment context, recognized by a minority of jurisdictions, the exception would not apply under the factual circumstances of this case because Plaintiff is unable to show that a special relationship existed between the parties.

## IV.  PLAINTIFF'S ALLEGATIONS OF FRAUD, DECEIT OR MISREPRESENTATION

Plaintiff claims that he has alleged acts by Defendant that amount to "fraud, deceit, or misrepresentation." Pl.'s Opp. to Mot. to Strike Tort Damages at 4.  Plaintiff insists that the

duties that Defendant breached were of a type imposed on members of society as a matter of public policy and, therefore, his claim for breach of the covenant of good faith and fair dealing is tort based.  Id. at 6.

Plaintiff may be able to prove Count II of his Complaint and demonstrate Defendant's breach of good faith and fair dealing if Plaintiff successfully alleges acts by Defendant that amount to fraud, deceit, or misrepresentation. Marcano v. Cowpet Beach Resort, 31 V.I. 99, 105 (V.I. Terr. Ct. 1995).  In Robinson v. Hess Oil Virgin Islands Corp., 19 V.I. 106, 111 (D.V.I. 1982), the court stated that "[i]t may be the case, that in order to establish a breach of the implied duty of good faith and fair dealing in accordance with Restatement (Second) of Contracts § 205, the employee plaintiff will have to prove that the conduct of the employer amounted to "fraud, deceit or misrepresentation."  See also A. John Cohen Ins. v. Middlesex Ins. Co., 392 N.E.2d 862, 864 (Mass. App. 1979) (dismissing claim for breach of the implied covenant of good faith because plaintiff failed to allege any conduct or acts by defendant which would constitute "an aspect of fraud, deceit or misrepresentation."); Merrill v. Crothall-American, Inc., 606 A.2d 96, 101 (Del. 1992) (finding that an employer acts in bad faith through actions, words, or the withholding of information, which is intentionally deceptive in some way material to the contract).

### A.  Plaintiff's Has Sufficiently Alleged an Act of Fraud, Deceit or Misrepresentation

To successfully allege an act of fraud or misrepresentation, a complainant must demonstrate: (1) a knowing misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of

that reliance.[8]  Restatement (Second) of Torts, § 530; see In re Tutu Wells Contamination Litig., 32 F.Supp.2d at 802; Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992); Lundy, 2000 U.S. Dist. LEXIS 8585 at *18.  Fraud occurs only when a person of ordinary prudence and comprehension would rely on the misrepresentations.  See Adolescent Psychiatry, S.C. v. Home Life Ins. Co., 941 F.2d 561, 571 (7th Cir. 1991).

Plaintiff alleged in paragraph 11 of the Complaint that Defendant promised to discipline Plaintiff's supervisor and alleged in paragraph 16 of the Complaint that he was falsely told that there was no work for him.  The Court finds that Defendant's alleged false promise to discipline Vice constitutes a knowing misrepresentation of material fact that Defendant intended Plaintiff to rely on and Plaintiff did so rely to his detriment.  Defendant allegedly made the promise to discipline Vice because he wanted Plaintiff to continue working under Vice's supervision, which Plaintiff did, subjecting himself to further harassment by Vice.  See Pl.'s Complaint ¶ 11.  The Court finds that Defendant's alleged false statement, telling Plaintiff that there was no work for him, does not sufficiently allege an act of fraud or misrepresentation due to a lack of any detrimental reliance by Plaintiff.  See Pl.'s Complaint ¶ 16.  Regardless, Plaintiff's allegations in paragraph 11 satisfy the four essential elements required to demonstrate fraud or misrepresentation.  Therefore, the Court finds that Plaintiff has sufficiently alleged an act by

---

[8] The federal pleading rules require that claims of fraud or misrepresentation be stated with particularity. Fed. R. Civ. P. 9(b).  Rule 9(b) requires that the plaintiff give defendants notice of the claims against them to provide an increased measure of protection of their reputations, and reduce the number of frivolous suits brought solely to extract settlements.  In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)); see Fin. Trust Co. v. Citibank, N.A., 268 F. Supp. 2d 561, 575 (D.V.I. 2003).  Although the rule does not require a recitation of "every material detail" of the alleged fraud or misrepresentation, it does require, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany "the first paragraph of any newspaper story -- that is, the who, what, when, where and how" of the events at issue.  In re Rockefeller Ctr. Props., Inc., 311 F.3d at 217 (citing In re Burlington, 114 F.3d at 1422); see Citibank, N.A., 268 F. Supp. 2d at 575.

Defendant that amounts to fraud, deceit or misrepresentation.[9] See D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984) ("[T]he factual allegations of the complaint must be viewed as true").

**B.   Plaintiff's Allegations of Fraud, Deceit or Misrepresentation Are Not Separate and Distinct From His Breach of Implied Duty of Good Faith and Dealing Claim**

Because Plaintiff has sufficiently alleged an act by Defendant that amounts to fraud, deceit, or misrepresentation, Count II of Plaintiff's Complaint, claiming that Defendant breached the duty of good faith and fair dealing, is not subject to dismissal for failure to state a claim. Cowpet Beach Resort, Inc., 31 V.I. at 105; see Hess Oil Virgin Islands Corp., 19 V.I. at 111; Middlesex Ins. Co., 392 N.E.2d at 864; Merrill v. Crothall-American, Inc., 606 A.2d at 101. Plaintiff's allegations of fraud, deceit or misrepresentation lay the groundwork for proving Count II of his Complaint by providing evidence that Defendant breached the implied covenant of good faith and fair dealing.[10]   However, such allegations do not suggest that Plaintiff is entitled to recover tort damages if a breach of the duty of good faith and fair dealing is ultimately found.[11]

_____

[9] Although Plaintiff's Complaint fails to assert a separate cause of action for fraud or misrepresentation, the Court must construe Plaintiff's Complaint liberally.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (the Court must liberally construe the complaint in Plaintiffs' favor) (citing Fed. R. Civ. P. 8(f) and Conley v. Gibson, 355 U.S. 41 (1957)).  The court must take all of the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff.  Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988), see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988); Haymond v. Lundy, 2000 U.S. Dist. LEXIS 8585 at *1-2 (E.D. Pa., June 22, 2000).  All reasonable inferences are drawn in Plaintiff's favor. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).

[10] The court in Sterling Nat'l Mortg. Co., 97 F.3d at 44 found that plaintiff had submitted evidence of defendant's acts of misrepresentation and "[s]uch a misrepresentation would be evidence of [defendant's] bad faith."

[11] In Bealer v. Mutual Fire, Marine and Inland Ins. Co., 2005 WL 1819971 at *4 (E.D. Pa., Dec. 22, 2005), the court dismissed the plaintiffs' claims of misrepresentation and fraud because the duties asserted by plaintiffs were "inextricably intertwined" with the terms of the consulting agreement between

Paragraph 11 of Plaintiff's Complaint, though couched in the language of tort, is nothing more than a claim for breach of the duty of good faith and fair dealing intertwined with allegations of fraud and misrepresentation.  See Chase Manhattan Bank, 40 F.Supp.2d at 318; see also Schuller Int'l., 987 F.Supp. at 394 ("It is not difficult to imagine many agreement-based complaints which may be characterized as sounding in tort when they more properly should be seen as contractual."); Phico Ins. Co. v. Presbyterian Medical Services Corp., 663 A.2d 753, 758 (Pa Super. Ct. 1995) (holding that while there were individual allegations of tortious activity in complaint, underlying complaint as a whole sounded in contract).

Plaintiff relies on the "gist of the action" doctrine in arguing that his claim for breach of the implied covenant of good faith and fair dealing, based on acts that amount to fraud, deceit or misrepresentation, is not limited to contract damages.  See Pl.'s Opp. to Mot. to Strike Tort Damages at 6.  The "gist of the action" test entails court examination of whether the gist of the plaintiff's action is based in contract or tort and whether contract remedies are sufficient to redress the plaintiff's injury.  Charleswell v. Chase Manhattan Bank, N.A., 308 F.Supp. 2d 545, 567 (D.V.I. 2004) (citing Bohler-Uddeholm America Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001)).  The "gist of the action" test is generally used to determine the essential nature of a cause of action involving multiple related claims.[12]  See Bohler-Uddeholm, 247 F.3d at 103 (gist of action test is used to determine "whether tort claims that accompany contract

---

the plaintiffs and the defendants.  The court held that, "the breaches of duty alleged are thus breaches of contractual duties, including the implicit duty of good faith and fair dealing… the gravamen of the claims is in contract."  Id.

[12] There is only one remaining claim in this case for breach of the implied covenant and Plaintiff's allegations of fraud or misrepresentation merely provide evidence in support of said claim.  The question before the Court is whether the breach of the duty of good faith and fair dealing is itself a tort claim or a contract claim.  See Bishop v. GNC Franchising LLC, 2007 WL 2390427 at *2 (3d Cir. Aug. 23, 2007); (affirming Bishop v. GNC Franchising LLC, 403 F.Supp.2d 411, 418 (W.D. Pa. 2005) ("The implied duty of good faith raised by plaintiffs is a contract, not a tort claim, and therefore cannot fall under the 'gist of the action'")).

claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract"); see also Charleswell, 308 F.Supp. 2d at 567.

In Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000), the court explained that

> the gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of **source of the duties** allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based. [emphasis added]

Thus, according to the "gist of the action" test, whether Plaintiff's claim is tortious or contractual depends on the source of the duty allegedly violated.  Id.

In the present case, the source of Defendant's duty of good faith and fair dealing is the employment contract between the parties and, therefore, the claim is contractual.  Whether or not the duty of good faith and fair dealing was breached by Defendant's alleged fraudulent or deceitful actions, any obligations Defendant owed to Plaintiff arose out of the employment agreement, as both parties' obligations have been defined by the explicit and implicit terms of such agreement.  See Bohler-Uddeholm, 247 F.3d at 104 (citing Bash v. Bell Telephone Co., 411 Pa. Super. 347, 601 A.2d 825, 830 (1992)); Lundy, 2000 U.S. Dist. LEXIS 8585 at *25. Defendant did not owe Plaintiff any special obligations other than those arising out of their employment contract.  See Benjamin v. Thomas Howell Group, 2002 WL 31573004 at *2 (D.V.I. April 22, 2002) ("As no contract existed between [defendant] and the [plaintiff], [defendant] owed no duty of good faith and fair dealing to the plaintiffs."); Bunge, 2007 U.S. Dist. LEXIS 48092 at *5.

The employment contract itself gives birth to the implied covenant of good faith and fair dealing and Count II of Plaintiff's Complaint realleges the exact same averments made in support of Plaintiff's breach of contract claim.  See Pl.'s Complaint at ¶ 36.  The essential foundation of the underlying Complaint in this case is the breach of the duty of good faith and fair dealing arising out of the employment contract and the tortious allegations of fraud and misrepresentation are ancillary.  See Am. Guarantee and Liability Ins. Co. v. Fojanini, 90 F.Supp.2d 615, 622-23 (E.D. Pa. 2000).  This conclusion is supported by the fact that Plaintiff averred that the actions which he relies upon to demonstrate tortious conduct collectively resulted in the breach of the contract's implied covenant of good faith and fair dealing.  Because Plaintiff is precluded from pursuing a tort action for the breach of contractual duties, Plaintiff cannot bring a tort claim for damages that merely replicates a claim for breach of the underlying contract.[13]  See Werwinski v. Ford Motor Co., 286 F.3d 661, 680 n. 8 (3d Cir. 2002); GNC Franchising LLC, 2007 WL 2390427 at *2.

_____

[13] "[T]ort claims may not be maintained in addition to the breach of contract claims." Barefoot Architect, Inc. v. Bunge, 2007 WL 1959167 at *2 (D.V.I. June 22, 2007) (dismissing plaintiff's fraud and misrepresentation claim due to lack of an independent duty owed outside of written contract for services); see also Galt Capital, LLP v. Seykota, 2007 WL 2126287 at * 3-4 (D.V.I. July 18, 2007) (holding that intentional misrepresentation claim arose entirely from plaintiff's allegations that defendant breached their contractual agreement and dismissing such claim for failure to allege independent tortious conduct); Werner Kammann Maschinenfabrik v. Max Levy Autograph, Inc., 2002 U.S. Dist. LEXIS 1460 at *21 (E.D. Pa.  Jan. 31, 2002) (dismissing fraud and misrepresentation claims against manufacturer that made false representations as completely intertwined with contractual claims because duties allegedly breached were created by the contract); Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 833-34 (E.D. Pa. 2000) (dismissing fraud claim against software company as a restatement of the breach of contract claim); Horizon Unlimited, Inc. v. Silva, 1998 WL 88391 at *4-5 (E.D. Pa.  Feb. 26, 1998) (dismissing plaintiff's misrepresentation claim based on allegedly false statements because it was contractual in nature); Factory Mkt. v. Schuller Int'l., 987 F.Supp. 387, 394-395 (E.D. Pa. 1997) (dismissing fraud and negligence claims against roofer, finding "the allegations set forth in plaintiff's fraud count, and reiterated in its brief, are simply another way of stating its claim for breach of contract.").

## V.  APPROPRIATE MEASURE OF CONTRACT DAMAGES

As the only remaining claim in Plaintiff's complaint, breach of the duty of good faith and fair dealing, is contractual, Defendant argues that Plaintiff cannot recover for humiliation, loss of reputation, physical ailments, medical expenses, mental anguish, loss of capacity to earn income, pain and suffering, and loss of enjoyment of life.  See Def.'s Mot. to Strike Tort Damages at 4. Plaintiff contends that, even if he is entitled only to contract damages, such damages would include mental anguish and physical suffering.  See Pl.'s Opp. to Mot. to Strike Tort Damages at 9.  Plaintiff insists that his mental anguish and physical injuries related thereto were foreseeable consequences of Defendant's actions.  Id. at 10.

A party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract.  Donovan v. Bachstadt, 453 A.2d 160, 165-66 (N.J. Super. Ct. 1982).  However, contract damages for mental anguish or emotional disturbance are generally not allowed because, even if they are foreseeable, they are particularly difficult to establish and to measure.  See Restatement (Second) of Contracts, § 353 ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."); see also Maduro v. American Airlines, Inc., 48 V.I. 233, 243 (V.I. Super. Ct. 2007) (finding that damages will not be given as compensation for mental suffering in actions for breach of contract, except where the breach was "wanton or reckless").  Only in exceptional circumstances will a breach of contract action warrant recovery for mental anguish or emotional disturbance.  Id.  This type of recovery has been allowed in a very limited number of cases which usually involve contracts for special

24

services, such as "the carriage or proper disposition of dead bodies and contracts for the delivery of messages concerning death."[14]  Id.

      An unduly sensitive plaintiff, even though he or she may be badly upset and suffer illness as a result, cannot recover for emotional disturbance or mental suffering upon mere hurt feelings due to conduct which is essentially trivial.  Maduro, 48 V.I. at 243.  The law has always been extremely cautious in allowing damages for emotional disturbance, for the manifest reason that such damages are "more sentimental than substantial," depending largely upon temperament and physical and nervous condition.  Rudner, 84 N.W.2d at 822.  The suffering of one under precisely the same circumstances would be no test of the suffering of another.  Id.  Due to the lack of an adequate standard by which such an injury can be even approximately measured, damages for mental suffering are subject to many, if not most, of the objections to speculative damages, which are universally excluded.  Id.

      Considerations of policy support the need for limitations on contract damages that compensate for mental suffering or emotional disturbance in the context of employment.  Parties would be more reluctant to join in employment relationships, or would expend more effort explicitly defining such relationships, if they faced the prospect of damages which could be out of proportion to the amounts involved in the employment contract.  E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d 436, 446 (Del. 1996).  Contracting is a bargained-for exchange and it

_____

[14] The Restatement notes that a breach of these types of contracts is highly likely to cause serious emotional disturbance.  Restatement (Second) of Contracts, § 353; see Hirst v. Elgin Metal Casket Co., 438 F. Supp. 906, 908 (D. Mont. 1977); Stewart v. Rudner, 84 N.W.2d 816, 825 (Mich. Super. Ct. 1957); Lamm v. Shingleton, 55 S.E.2d 810, 812-13 (N.C. Super. Ct. 1949); see also Restatement (Second) of Contracts, § 353, Illus. 3 ("A makes a contract with B to conduct the funeral for B's husband and to provide a suitable casket and vault for his burial. Shortly thereafter, B discovers that, because A knowingly failed to provide a vault with a suitable lock, water has entered it and reinterment is necessary. B suffers shock, anguish and illness as a result. In an action by B against A for breach of contract, the element of emotional disturbance will be included as loss for which damages may be awarded.").

is the primary mechanism for the allocation of goods, labor and other resources "in a socially

desirable manner." Restatement (Second) of Contracts, Introductory Note to ch. 16.  The Court

recognizes the need for caution in fashioning common-law remedies which might inhibit such

activity.  See Harris v. Atlantic Richfield Co., 17 Cal. Rptr. 2d 649, 653-654 (Cal. App. Ct.

1993) (stating that restrictions on contract remedies "promote contract formation by limiting

liability to the value of the promise"); Miller Brewing Co. v. Best Beers of Bloomington, Inc.,

608 N.E.2d 975, 981 (Ind. 1993) ("[W]ell-defined parameters . . . lend a needed measure of

stability and predictability"); Carpel v. Saget Studios, Inc., 326 F. Supp. 1331, 1333 (E.D. Pa.

1971) ("[C]onsequential damages are normally only available to a plaintiff when they are

ascertainable to a reasonable certainty…damages which are wholly speculative in amount and

incapable of reasonable ascertainment are not allowed"); see also Pierce v. Int'l Ins. Co. of Ill.,

671 A.2d 1361, 1367 (Del. 1996) (finding that damages for emotional distress are not available

for violation of the duty of good faith and fair dealing in contract action); Pressman, 679 A.2d at

443 (same holding).

The Court holds that damages for emotional distress are not available for violation of the

duty of good faith and fair dealing in an employment contract action unless particularly

egregious conduct is shown and the breach is of such a kind that serious emotional disturbance is

an especially likely result of said conduct.  See Restatement (Second) of Contracts, § 353;

Maduro, 48 V.I. at 243.  Only where the contract is personal in nature and the contractual duty or

obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of

the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably

result in mental anguish or suffering, and it should be known to the parties from the nature of the

contract that such suffering will result from its breach, may compensatory damages be

recovered.[15]  Shingleton, 55 S.E.2d at 813; see also Restatement (Second) of Contracts, § 353, Illustration 1 ("A contracts to construct a house for B.  A knows when the contract is made that B is in delicate health and that proper completion of the work is of great importance to him. Because of delays and departures from specifications, B suffers nervousness and emotional distress.  In an action by B against A for breach of contract, the element of emotional disturbance will not be included as loss for which damages may be awarded.").

It is unlikely that Plaintiff has alleged conduct which rises to the level of extremity or outrageousness necessary to recover for mental suffering in this case.  Based on Plaintiff's allegations, Defendants' agent cursed at him using the word "fuck," which he repeatedly complained about, but Defendant failed to discipline the agent after promising Plaintiff that everything would be taken care of.  Complaint ¶¶ 9-10.  According to Plaintiff, Defendant fired him due to Plaintiff's inability to work with the agent.  Complaint ¶ 27.  Even in viewing the available facts of this case in a light favorable to Plaintiff, the Court is doubtful that Defendant's alleged actions amount to "wanton or reckless" conduct.  Maduro, 48 V.I. at 243.[16]  Employees must be expected to be hardened to a certain amount of rudeness or minor insolence, which any

---

[15] In considering measure of damages to be awarded for violation of the duty of good faith and fair dealing in an employment contract, the court in Pressman, 679 A.2d at 443 noted that "historically, damages for breach of contract have been limited to the non-breaching parties' expectation interest."  See also Bachstadt, 453 A.2d at 165 ("defendant is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made."); Shingleton, 55 S.E.2d at 812-13 ("A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for all injuries and only such injuries as are the direct, natural, and proximate result of the breach or which, in the ordinary course of events, would likely result  from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract as a probable or natural result of a breach...").

[16] The Maduro court noted that "[p]rofanity may not be grossly insulting, where it obviously amounts to nothing more than mere emphasis or a habit of speech, or where it is so customary in the particular community that it may be said to be generally tolerated."  Maduro, 48 V.I. at 243.  The court found that a ticket agent's rude behavior and use of offensive language directed at a passenger was not especially egregious or reckless such that severe mental suffering should have been expected as a particularly likely or probable result of his actions.   Id.

reasonable person would consider offensive but harmless and unimportant.  Id.  see Wilder, 868 P.2d at 220-22.

Additionally, it is not likely that the employment contract involved and Defendant's alleged breach in this case is one where mental suffering or emotional disturbance was a particularly likely risk.  Plaintiff's resulting emotional disturbance and physical suffering was probably not a foreseeable consequence of Defendant's actions.[17]   See Restatement (Second) of Contracts, § 353.  Accordingly, Plaintiff is unlikely to recover for anything that amounts to "emotional disturbance," including damages for humiliation, loss of reputation, mental anguish, and loss of enjoyment of life.  Plaintiff is also unlikely to recover for anything that resulted from the alleged "emotional disturbance," including damages for physical ailments, medical expenses, loss of capacity to earn income, and pain and suffering.  See True N. Composites, LLC v. Trinity Indus., Inc., 191 F. Supp. 2d 484, 527 (D. Del. 2002) ("Violation of the duty of good faith and fair dealing is a breach of contract, and thus, in the typical case, the damages properly awarded are concurrent with those awarded for a breach of the contract's explicit provisions.").

Nevertheless, the Court finds that there remain material questions in this matter regarding (1) whether Defendant's alleged actions amount to "wanton or reckless" conduct that was particularly egregious and (2) whether Plaintiff's emotional disturbance and resulting physical impairment were a foreseeable consequence of such actions.  Although mental suffering is not likely to be an element of damages in a case such as this one, until discovery has been completed and the facts assessed, the Court will not prematurely determine what specific types of

---

[17] While damages for "mental suffering" are sometimes recoverable when "the breach is of such a kind that serious emotional disturbance is a particularly likely result," the factual circumstances of this case suggest that recovery is not warranted due to a lack of foreseeability.  Restatement (Second) of Contracts § 353.  Defendant's interaction with Plaintiff was probably not the type of conduct proscribed by the Restatement.

contractual damages are available to Plaintiff.  The resolution of the issue needs to await further factual development at trial and cannot be resolved at such an early stage.  Depending on the evidence presented at trial, the Court will consider an appropriate measure of damages.

## VI.    CONCLUSION

The Court holds that the duty of good faith and fair dealing arises under contract law and tort damages are not recoverable for a breach of the implied covenant in an employment context. To the extent that Plaintiff has alleged acts that amount to fraud, deceit or misrepresentation, the Court finds that such allegations are inextricably intertwined with Plaintiff's contractual claims for breach of the duty of good faith and fair dealing.  In this case, no duty to refrain from misrepresentation exists independently of the performance of the at-will employment contract. Because the duty allegedly breached by Defendant was created by the employment agreement itself, a remedy in tort is not available even if Plaintiff ultimately proves his case.  Any damages which Plaintiff may be entitled to recover are contractual in nature.  For the reasons stated herein, Defendant's Motion to Strike Tort Damages is **GRANTED**.

**ENTERED this 20th day of May, 2008.**

_____
                         /s/
**HONORABLE RAYMOND L. FINCH**
**U.S. DISTRICT JUDGE**